UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

            Plaintiff,

and

HEATHER YEBBA,

            Intervening Plaintiff,

    v.

NORTHLAKE FOODS, INC. d/b/a WAFFLE
HOUSE,

            Defendant.

Case No:. 8:04-cv-2156-T-23EAJ

---

**DEFENDANT NORTHLAKE FOODS, INC.'S MOTION FOR
PROTECTIVE ORDER TO PROHIBIT PLAINTIFF UNITED
STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
FROM DISCLOSING MEDIATION COMMUNICATIONS
AND INFORMATION OBTAINED DURING MEDIATION**

Defendant, Northlake Foods, Inc. ("NLF"), by and through undersigned counsel,

and under Federal Rule of Civil Procedure 26(c) and Rule 9.07(b) of the Rules of the

United States District Court for the Middle District of Florida, files this Motion for

Protective Order to Prohibit Plaintiff United States Equal Employment Opportunity

Commission from Disclosing Mediation Communications and Information Obtained

During Mediation, and states as follows:

### **Motion**

1.     On September 28, 2004, the United States Equal Employment Opportunity Commission ("EEOC") commenced this civil action against NLF alleging NLF violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17. (Doc. 1.)  The EEOC alleges that Heather Yebba, a former employee of NLF, was sexually harassed during her employment by an NLF customer, and that NLF's failure to prevent the alleged harassment violated Title VII.  (*Id.* ¶ 7)

2.     On December 1, 2004, this Court granted permission to Yebba to intervene.  (Doc. 9.)  Yebba asserted a claim under Title VII as well as a claim under the Florida Civil Rights Act of 1992, Fla. Stat. ch. 760.01—.11.  (Doc. 7.)  Yebba's claims were based on the same allegations as set forth in the EEOC's Complaint.  (*See id.* ¶¶ 9, 35.)

3.     On January 11, 2005, this Court entered an order requiring the parties to attend mediation before mediator Peter J. Grilli.  (Doc. 13.)  The parties, including Yebba, attended mediation on April 19, 2005.  (Doc. 21.)

4.     At the mediation, NLF and the EEOC could not resolve their differences, and the EEOC departed the mediation.  (Saylor Aff. ¶ 4, attached hereto as Exhibit A.) After the EEOC departed the mediation, NLF and Yebba continued the mediation and entered into a private settlement agreement several hours later.  (*Id.*)  The EEOC is not a party to the agreement.  (*Id.*)

5.     The private settlement agreement entered into between Yebba and NLF at the mediation includes a confidentiality provision precluding Yebba from disclosing its

terms.  (*Id.* ¶ 5.)[1]

6.      NLF engaged in negotiations during the mediation process with the belief that any of its statements made in connection with such negotiations during mediation would remain confidential.  (*Id.* ¶ 6.)  NLF never believed that the EEOC would be entitled to disclose to the public statements made by NLF during the mediation, and NLF never would have disclosed certain information to the EEOC during the mediation had it known the EEOC would subsequently take the position that it had the right to disclose such information to the public.  (*Id.*)

7.      When NLF and Yebba entered into their private settlement agreement after the EEOC departed the mediation, the inclusion of a confidentiality provision was of utmost importance to NLF.  (*Id.* ¶ 7.)  NLF would not have entered into the private settlement agreement without a confidentiality provision, and would not have entered into the agreement if it had been aware the EEOC would take the position that it could disclose to the public certain information obtained by it during the mediation.  (*Id.*)

8.      After the mediation, the EEOC indicated to NLF's counsel that it believes the private settlement reached between Yebba and NLF includes NLF making a monetary payment to Yebba, and that it believes it knows the amount of the monetary payment. (Letter from Lewis to O'Gorman of 5/3/05, attached hereto as Exhibit B.)[2]  The EEOC presumes to know that the private settlement agreement includes a monetary payment, and presumes to know the amount of the purported monetary payment, because the

---

[1] To preserve the confidentiality of the agreement, NLF has not attached a copy of the agreement to this motion, and has only disclosed in this motion those portions of the agreement that are relevant to the instant issue.

[2] A portion of Ms. Lewis' letter that discloses statements allegedly made by the EEOC during the mediation has been redacted to comply with Local Rule 9.07(b).

EEOC was privy to negotiations that occurred during the mediation prior to the EEOC departing.

9.      The EEOC has informed NLF's counsel that it believes it is entitled to disclose to the public the amount it believes NLF agreed to pay Yebba under their private settlement agreement reached during mediation.  (*See id.*)[3]

10.     As demonstrated below in the supporting Memorandum of Law, there exists good cause for entering a protective order prohibiting the EEOC from disclosing any communications occurring during mediation, or any information obtained during mediation, including what it believes is the amount of monetary compensation NLF has allegedly agreed to pay Yebba under the private settlement agreement between Yebba and NLF.

11.     Undersigned counsel has conferred with counsel for the EEOC in a good-faith effort to resolve without court action the issues and disputes raised by this motion, but undersigned counsel and the EEOC's counsel have been unable to agree on the resolution of this motion.  Undersigned counsel has conferred with counsel for Yebba, and Yebba's counsel has indicated that he takes no position on this motion.

WHEREFORE, NLF respectfully requests that this Court enter an order prohibiting the EEOC from disclosing to any person or entity any communications occurring or information obtained during the mediation in this action, including, but not

---

[3] All of the parties to this action agree that Yebba's Complaint and the EEOC's claims for victim-specific relief are due to be dismissed as a result of the private settlement agreement between NLF and Yebba. However, the EEOC refuses to agree to a notice of dismissal unless it discloses the settlement amount. Accordingly, NLF will be filing a motion to involuntarily dismiss Yebba's Complaint and the EEOC's claims for victim-specific relief. *See EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539 (9th Cir. 1987) (settlement by private party moots EEOC's claims for victim-specific relief).

limited to, what it believes is the amount of monetary compensation NLF allegedly agreed to provide to Yebba pursuant to the private settlement agreement reached between Yebba and NLF at the mediation.  NLF also requests that it be granted its reasonable expenses incurred in making this motion, including attorney's fees.

**Memorandum of Law**

**I.     GOOD CAUSE EXISTS FOR ENTERING A PROTECTIVE ORDER BECAUSE LOCAL RULE 9.07(b) PROHIBITS THE EEOC FROM DISCLOSING COMMUNICATIONS AND INFORMATION OBTAINED DURING MEDIATION**

Local Rule 9.07(b), entitled "Restrictions on the Use of Information Derived During the Mediation Conference," provides, with respect to court-annexed mediation, that "[a]ll proceedings of the mediation conference, including statements made by any party, attorney, or other participant, are privileged *in all respects*."  U.S. Dist. Ct. M.D. Fla. Loc. R. 9.07(b) (emphasis added).[4]  Local Rule 9.07(b) further provides that "[t]he proceedings may not be *reported*, recorded, placed into evidence, made known to the trial court or jury, or construed for any purpose as an admission against interest."  *Id.* (emphasis added).  The Local Rule does not identify any exceptions to this prohibition. Additionally, the Alternative Dispute Resolution Act of 1998, which requires district courts to provide litigants with at least one alternative dispute resolution process, *see* 28 U.S.C. § 652(a), provides that "each district court shall, by local rule . . . , provide for the confidentiality of the alternative dispute resolution processes and to prohibit disclosure of confidential dispute resolution communications."  28 U.S.C. § 652(d).

---

[4] The mediation that occurred in this action was "court-annexed mediation" because it was ordered by the Court. *See, e.g., Sheldone v. Pa. Turnpike Comm'n*, 104 F. Supp. 2d 511, 514 n.2 (W.D. Pa. 2000) (defining court-annexed mediation as "mediation ordered by the Court").

The importance of confidentiality with respect to mediation communications is well recognized.  "Both federal and state courts have recognized that confidentiality is essential to the mediation process."  *Sheldone v. Pa. Turnpike Comm'n*, 104 F. Supp. 2d 511, 513 (W.D. Pa. 2000).  "[I]t is beyond doubt that the mediation privilege is rooted in the imperative need for confidence and trust."  *Id.* at 514.  The promise of confidentiality is necessary to the success of mediation:

> If participants cannot rely on the confidential treatment of everything that transpires during [mediation] sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tightlipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute.  This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements . . . , thereby expediting cases at a time when . . . judicial resources . . . are sorely taxed.

*Id.* at 513 (quoting *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979)) (emphasis deleted).  "The very nature of [the mediation] process mandates a need for confidence and trust so that the parties can honestly and openly discuss the strengths and weaknesses."  *Id.* at 516.  If mediation proceedings were not confidential, "[t]he effectiveness of mediation would be destroyed, thereby threatening the well established public needs of encouraging settlements and reducing court dockets."  *Id.* at 514.[5]

Allowing the EEOC to publicly disclose mediation communications such as those at issue would have a detrimental effect on the ability to resolve cases.  If the EEOC is

---

[5] Even the EEOC's mediation program, which is designed to resolve charges of discrimination prior to the charging party filing a lawsuit, includes a promise of confidentiality:  "Information disclosed during mediation will not be revealed to anyone . . . .."  The U.S. Equal Employment Opportunity Commission, "Facts About Mediation," *available at* http://www.eeoc.gov/mediate/facts.html (last modified Nov. 1, 2004).  Thus, the EEOC itself recognizes the importance of confidentiality to a successful mediation program.

allowed to make the disclosures at issue, it will decrease Title VII settlements between

plaintiff-intervenors and defendants because an important issue for defendants

(confidentiality regarding any monetary payment) will be unattainable as long as the

EEOC is privy to discussions during mediation regarding such monetary payment.

Defendants, knowing that confidentiality cannot be attained, will offer less monetary

compensation than they otherwise would have, thereby reducing the number of cases that

will be settled.  This will run counter to Congress' "strong preference for encouraging

voluntary settlement of employment discrimination claims."  *Carson v. Am. Brands, Inc.*,

450 U.S. 79, 88 n.14 (1981).

## II.     THE EEOC'S ARGUMENTS IN SUPPORT OF DISCLOSURE LACK MERIT

It is undisputed that any information the EEOC might have regarding the terms of

the private settlement agreement between Yebba and NLF (including whether NLF

agreed to provide Yebba with monetary compensation) was obtained by the EEOC during

court-ordered mediation.  Thus, disclosing such information is prohibited by the express

terms of Local Rule 9.07(b).  Notwithstanding, the EEOC argues that it is entitled to

disclose such information.  A review of the EEOC's arguments, however, demonstrates

that they are insufficient to override the requirement of confidentiality that applies to

mediation proceedings under Local Rule 9.07(b).

### A.      The EEOC's distinction between settlement "terms" and settlement "negotiations"

The EEOC argues that it "obviously intends to comply fully with all

confidentiality restraints relating to settlement *negotiations*," but that it "will not be

gagged regarding any settlement *terms* that it secures in cases it litigates, this case

included." (Letter from Lewis to O'Gorman of 4/26/05, attached hereto as Exhibit C, at

2.)[6] This argument is flawed for several reasons.

First, the EEOC offers no support for its theory that settlement "negotiations" are

to be treated differently from settlement "terms" with respect to the confidentiality of

mediation proceedings. In fact, under the Local Rules, the mediator is simply to indicate

to the court whether the case settled. *See* U.S. Dist. Ct. M.D. Fla. Loc. R. 9.06(b). There

is no exception to Local Rule 9.07(b) allowing settlement terms reached during mediation

to be disclosed. This is not a situation in which a party to a settlement agreement that

was reached during mediation is alleging a breach of the agreement and seeking to

enforce it terms.

Second, the EEOC cannot even be certain of the "terms" included in the private

settlement agreement between Yebba and NLF because the agreement was entered into

several hours after the EEOC departed the mediation. The EEOC could not have

received information regarding the actual terms of the agreement after it was entered into

because it contains a provision prohibiting Yebba from disclosing the terms, and the

EEOC has indicated that "[a]t no time has Ms. Yebba or her counsel disclosed to the

EEOC the content of her private settlement agreement with NLF." (*See* Ex. B at 1.)

Additionally, the EEOC has never received a copy of the private settlement agreement.

Thus, the EEOC can only be aware of negotiations occurring during the mediation, and

can only speculate (based on its knowledge of such negotiations) as to the actual terms of

---

[6] A portion of Ms. Lewis' letter that discloses statements allegedly made by the EEOC during the
mediation has been redacted to comply with Local Rule 9.07(b).

the private settlement agreement reached between Yebba and NLF after the EEOC departed the mediation.  Accordingly, the EEOC's reliance on an argument that the terms of a settlement agreement to which it is not a party are somehow different from negotiations is misplaced because the EEOC does not know the actual terms of the settlement agreement.

Third, the EEOC is incorrect when it suggests that it, as opposed to Yebba's counsel, secured the settlement terms for Yebba.  The EEOC and NLF could not resolve their differences at mediation, and Yebba and NLF remained at the mediation after the EEOC departed, subsequently entering into a written settlement agreement several hours later.  This is not a case in which the private party stood by on the sidelines and watched the EEOC litigation.  To the contrary, Yebba intervened in this action, had her own attorney, asserted claims under Title VII and the Florida Civil Rights Act, and has been an active participant in the litigation by filing a complaint, conducting written discovery, participating in depositions, and participating in the mediation.

Accordingly, the EEOC's attempt to distinguish between settlement "negotiations" and settlement "terms" is unavailing.

### B.      Public's Right to Know

The EEOC argues that public policy "mandate[s] the EEOC's disclosure of settlement terms in cases that it litigates," and the public should have "access to information about how the Commission discharges its mandate to prevent employment discrimination . . . ."  (Ex. B at 1.)  Local Rule 9.07(b), however, does not provide for any such exception, and the EEOC has not provided any authority supporting its position that

it is entitled to disclose the terms of the private settlement agreement simply because it is a governmental agency.

The EEOC cites four cases holding that the public has a right of access to court filings. (*See id.* at 2.)  However, these cases are distinguishable because each dealt with the public's right of access to judicial records, which is not the issue involved in this motion.  For example, *EEOC v. National Children's Center, Inc.*, 98 F.3d 1406 (D.C. Cir. 1996), and *EEOC v. Erection Co.*, 900 F.2d 168 (9th Cir. 1990), both dealt with whether a consent decree in the court record should be sealed by the court.  In *FTC v. Standard Financial Management Corp.*, 830 F.2d 404 (1st Cir. 1987), the court dealt with whether financial statements provided to the court by the defendants, and that were germane to the court's approval process of the consent decree, were considered judicial records to which the common law presumption of public access applied.  In *Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013 (11th Cir. 1992), the court addressed whether the court file should be sealed.

In this case, NLF does not seek to have sealed any records in the court file.  In fact, there are not even any records at issue (in the court file or otherwise) because the EEOC does not have a copy of the private settlement agreement.  Rather, NLF is simply seeking to prevent the EEOC from disclosing communications made, and information obtained, during a court-annexed mediation.  The EEOC itself even refers to the agreement as Yebba's "*private* settlement agreement with NLF."  (Ex. B at 1) (emphasis added).  If the EEOC and NLF ultimately resolve their differences prior to a trial on the merits, and enter into a settlement agreement that is approved by the court in the form of

a consent decree (which the EEOC has the right to insist upon as part of any settlement between it and NLF), the public will have access to that document.

Furthermore, the public interest in knowing the specific terms of the private settlement agreement between Yebba and NLF is minimal.  The mediator has already submitted a mediation report to this Court indicating that Yebba and NLF resolved their differences, and thus the public will be aware that the EEOC filed suit on Yebba's behalf, Yebba intervened, and then Yebba and NLF resolved their differences.  This is sufficient information for the public to evaluate the EEOC's court enforcement efforts in this action with respect to Yebba's victim-specific claims for relief.  Additionally, the public's interest in victim-specific relief is not nearly as great as its interest in the EEOC's requests for injunctive relief.  *See, e.g., EEOC v. N. Gibson Sch. Corp.*, 266 F.3d 607, 616 (7th Cir. 2001) (noting that "courts have distinguished claims for injunctive relief from those for individual monetary damages by contrasting the high level of public interest served when the EEOC seeks an injunction with the minimal public interest served by an individual monetary award.").  The public's interest in knowing the terms of a private settlement agreement is certainly outweighed by the public's interest in promoting the resolution of lawsuits through mediation's promise of confidentiality.

The EEOC argues that "NLF was well aware of the public policy issue that mandates the EEOC's disclosure of settlement terms in cases that it litigates."  (Ex. B at 1).  However, NLF has never been aware that the EEOC believes it can disclose mediation communications in those situations in which the plaintiff-intervenor and the defendant, without the consent of the EEOC, enter into a private settlement agreement

during mediation.  The fact that the EEOC, after filing this lawsuit, requested that any settlement agreement between it and NLF include the entry of a public consent decree is much different from the EEOC insisting that it can disclose the terms of a private settlement agreement between NLF and Yebba reached during mediation.  If NLF had been aware that this is the EEOC's position, it would have made no sense for NLF and Yebba to include a confidentiality provision in their private settlement agreement; such a provision would have been useless if the EEOC could publicly disclose the agreement's terms.

## III.   CONCLUSION

NLF is not seeking to prevent the public from having access to judicial records, and NLF is not seeking to prevent the public from being aware of injunctive relief the EEOC might ultimately be able to obtain in this action.  Rather, NLF is simply seeking to prevent the EEOC from publicly disclosing information it obtained during a court-ordered mediation.  While the EEOC might be disappointed that Yebba resolved her victim-specific claims against NLF pursuant to a private settlement agreement that included a confidentiality provision, that is insufficient to warrant an exception to the requirement that communications occurring during mediation remain confidential.

Respectfully submitted,

By: s/Daniel P. O'Gorman
    Thomas C. Garwood, Jr.
    Florida Bar No. 137120
    Daniel P. O'Gorman
    Florida Bar No. 54062
    FORD & HARRISON LLP
    300 South Orange Avenue, Suite 1300
    Orlando, FL  32801
    Telephone: 407-418-2300
    Facsimile:  407-418-2327

    Kelly H. Chanfrau
    Florida Bar No. 0560111
    FORD & HARRISON LLP
    101 East Kennedy Boulevard, Suite 900
    Tampa, FL  33602
    Telephone: 813-261-7800
    Facsimile:  813-261-7899
    Attorneys for Defendant
    Northlake Foods, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 14, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: **Muslima Lewis, Esquire,** United States Equal Employment Opportunity Commission, Miami District Office, One Biscayne Tower, 2 Biscayne Blvd., Suite 2700, Miami, Florida 33131; **James M. Thompson, Esquire,** Nelson, Bisconti & Thompson, L.L.C. 718 W. MLK Boulevard, Suite 200 Tampa, Florida 33603-3104.

        s/Daniel P. O'Gorman
        Daniel P. O'Gorman

Orlando:82455.1